**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Cr. No. 23-69 |
| | ) | |
| JEFFREY MCLAUGHLIN, | ) | |

## Opinion and Order on Motion for a *Franks* Hearing

Mr. McLaughlin is charged in a six-count Indictment with Distribution of Material Depicting the Sexual Exploitation of a Minor[1] (Count One), Production and Attempted Production of Material Depicting the Sexual Exploitation of a Minor[2] (Count Four), Possession of Material Depicting the Sexual Exploitation of a Minor[3] (Count Six), and three counts of Coercion and Enticement and Attempted Coercion and Enticement of a Minor to Engage in Illegal Sexual Activity[4] (Counts Two, Three, and Six).  ECF No. 1.

Presently before the Court is Defendant Jeffrey McLaughlin's Motion for a *Franks* Hearing in which he challenges the validity of two affidavits of probable cause submitted in support of three search warrants.  ECF No. 39.  Mr. McLaughlin argues that the affidavits contain material misrepresentations and reckless misstatements of fact rendering the three warrants invalid under *Franks v. Delaware*, 438 U.S. 154  (1978).  The government has filed a Response to the Motion.  ECF No. 50, at 28-40.[5]  After careful review of the briefs and the challenged affidavits and warrants, the Motion will be denied.

---

[1] 8 U.S.C. §§ 2252(a)(2) and 2252(b)(1).
[2] 18 U.S.C §§ 2251(a) and 2251(e).
[3] 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2).
[4] 18 U.S.C. § 2422(b).
[5] Mr. McLaughlin has filed seven pretrial motions, to which the government filed an Omnibus Response.

## I. Background

Mr. McLaughlin challenges two affidavits dated November 21, 2021 and July 21, 2022, written in support of three warrants.  The first Affidavit, seeking a warrant for information associated with a Facebook account believed to be Mr. McLaughlin's account, was authored by Federal Bureau of Investigation Special Agent Randall Garver, working out of the FBI's Buffalo, New York Field Office.  Appl. For Search Warrant with Supp. Affidavit, Nov. 22, 2021, ECF No. 50-2 (Sealed) ("Facebook Aff.").  The second Affidavit, seeking authorization to search Mr. McLaughlin's person and his residence, was authored by FBI Special Agent Lauren Scott, working out of the FBI's Pittsburgh Field Office.  Aff. in Support of an Appl. Under Rule 41 for Warrants to Search and Seize, July 21, 2022, ECF No. 39-1 (Search Warrants Aff.).

### *Facebook Affidavit*

On August 5, 2021, a Sheriff's Investigator with the Erie County Sheriff's Office in New York telephoned Special Agent Garver to inform him that he had learned that adult men had engaged in online sexual conversations with a twelve-year-old girl residing in Buffalo, New York.  The Sheriff's Investigator explained that the information was relayed to him by the victim's twelve-year-old twin sister.  Facebook Aff. ¶ 6.  The sister reported that her twin sister, the victim, would go online to "look for boys" and had sent nude images of herself to others.  *Id.* The sister also reported that she had seen material on her twin sister's phone within the past few months that would constitute Child Sexual Abuse Material (CSAM).  *Id.*

The Investigator also spoke with the victim.  The victim told the Investigator that she communicates online with unknown males and that she had sent nude images to the males and received nude images back from the males.  *Id.*  Both the victim and her sister told the Investigator that a Facebook user named "Timmy Adams" had sent the victim a picture of his

penis and that Timmy Adams had requested that the victim send him nude images.  *Id.*  Such

conversations and photos had been deleted from the victim's phone before law enforcement

interviewed the victim.  *Id.*

      Based on the information learned from the victim and her sister, the FBI identified that

the interactions occurred between the victim and Facebook account "timmy.adams.54738" with

username, "Timmy Adams."  *Id.* at ¶ 7.  The FBI submitted an administrative subpoena for

Facebook account timmy.adams.54738.  *Id.*  Through the information received from Facebook,

the FBI learned that the account was associated with telephone number 412-403-1573.  *Id.*

Investigation of public sources revealed that the telephone number 412-403-1573 was associated

with a Jeffrey Allen McLaughlin II, date of birth of March 5, 1982, and an address of 521

Vermont Avenue, Glassport, Pennsylvania.  *Id.* at ¶ 8.  The FBI also discovered that Jeffrey

McLaughlin was the subscriber to the cellular phone service of the phone number, 412-403-

1573.  *Id.* at ¶ 9.  The cellular phone account was also linked to the address, 521 Vermont

Avenue, Glassport, Pennsylvania.  *Id.*  Special Agent Garver also reviewed Jeffrey McLaughlin's

criminal history, which he discovered contained approximately eleven convictions, including

indecent exposure, stalking, corruption of minors, and possession of child pornography.  *Id.* at ¶

10.

      On November 17, 2021, Special Agent Garver interviewed the victim in her home in

Buffalo, New York.  The pertinent portions of the interview are as follows:

      11.    . . . During the interview, [the victim] recalled engaging in
sexual communications during the summer of 2021 over Facebook messenger
with McLaughlin (who [the victim] referred to as "Timmy Adams"
throughout the interview). [The victim] recalled the chats with
MCLAUGHLIN were sexual in nature and that he sent her pictures of his
penis. [The victim] said she sent MCLAUGHLIN pictures of her vagina in
return. [The victim] told us that she thought MCLAUGHLIN was about 18
years old. However, MCLAUGHLIN never sent [the victim] a picture of his

face. [The victim] showed me the "Timmy Adams" Facebook profile picture that depicted an approximately 18-year-old man (and I confirmed the account was timmy.adams.54738).

12.     During the same interview, [the victim] said MCLAUGHLIN threatened [her] with 'finding her' if she did not comply with their demands. [the victim] believed the statements were threats that she would be raped or killed should she refuse. [the victim] said she told MCLAUGHLIN that she was 17-years old. . . .

*Id.* at ¶¶ 11-12.  On November 21, 2021, the victim's mother consented to law enforcement

assuming the victim's online identity to engage in conversations with the "Timmy Adams"

Facebook account.  *Id.* at ¶ 12.  That same day, an FBI online covert employee (OCE) used the

victim's Facebook account to engage in online conversations with Jeffery McLaughlin through

Facebook account timmy.adams.54738.  *Id.* at ¶ 13.  During a conversation, Jeffrey McLaughlin

sent an eight second nude video of himself to the OCE.  *Id.* at ¶ 13.  Special Agent Garver stated

that he believed the investigation, along with all other items in the Affidavit, demonstrated

probable cause to believe that the user of Facebook account timmy.adams.54738 engaged in

"violations of 18 U.S.C. § 2251(a), 2251(e) (production and attempted production of child

pornography; 18 U.S.C. § 2252A(a)(5)(B) (production and attempted production of child

pornography); and 18 U.S.C. § 2423(a) (sexual enticement of a minor)" and that evidence of said

violations would be found through a search of the Facebook account.  *Id.* at ¶¶ 4-5, and

Attachments A & B.

Special Agent Garver also states that he has relevant training as to the investigation

and enforcement of federal law regarding child sexual abuse materials, sexual enticement,

and cyberstalking, in which computers or smartphones/devices are used in engaging in the

violations of such laws.  *Id.* at 1.  Special Agent Garver also provided general information

regarding computers, devices, and the internet, as well as details regarding Facebook.  *Id.* at
¶¶ 14-17 and ¶¶ 18-34.

### *Person and Residence Search Warrants*

In the Search Warrants Affidavit, Special Agent Scott explains that FBI Buffalo
contacted FBI Pittsburgh for assistance in the investigation because the subject, Jeffrey
McLaughlin, resides in the Western District of Pennsylvania.  *Id.* at ¶ 19.  Special Agent Scott
stated that the purpose of the application for the search warrants was for law enforcement to
obtain evidence of violations of

> Title 18, Sections 2251(a) and (e) (production and attempted production of
> material depicting the sexual exploitation of a minor (child pornography)); Title
> 18, United States Code, Section 2252(a) (distribution, receipt, and possession of
> material depicting the sexual exploitation of a minor (child pornography)); Title
> 18, United States Code, Section 2423(a), which makes it a crime to transport a
> minor for the purpose of engaging in criminal sexual activity; Title 18, United
> States Code, Section 2423(b), which makes it a crime to travel in interstate or
> foreign commerce with the purpose of engaging in illicit sexual conduct.

Search Warrants Aff. ¶ 5.  Special Agent Scott specifically stated that she believes the facts
contained in the Affidavit establish probable cause that evidence of the above violations would
be located at Mr. McLaughlin's residence and on his person.  *Id.* at ¶ 8.  The Affidavit also states
Mr. McLaughlin's criminal history, including his arrests and convictions, as well as the fact that
Mr. McLaughlin is currently on probation for corruption of minors.  *Id.* at ¶ 20.

As correctly stated by defense counsel, a large portion of Special Agent Scott's Affidavit
repeats significant information stated by Special Agent Garver in the Facebook Affidavit.  Mot.
for Franks Hrg. 6.  The overlap between the two Affidavits appears in Special Agent Scott's
Affidavit at paragraphs 9-18.  Having had the benefit of the fruits of the New York FBI's
execution of the Facebook search warrant, Special Agent Scott states that FBI Buffalo reviewed
the timmy.adams.54738 Facebook account information and discovered a conversation between

the user of the account and a different minor victim (Victim 2), that took place between August 1, 2021 and November 22, 2021.  *Id.* at 22-26.  Said interactions include evidence of the sexual exploitation of a minor.  *Id.* at 23.  On May 4, 2022, law enforcement again employed an online covert employee to engage in a second online Facebook conversation with Mr. McLaughlin.  *Id.* at 27-29.  These conversations, which appear to be evidence of child sexual exploitation, are reproduced at length in the Affidavit at paragraphs 27 through 29.

In the Affidavit, Special Agent Scott also provides her relevant training and experience concerning crimes against children, cybercrime, child exploitation, and child pornography, including the illegal possession, receipt, transmission, and production of child sexual abuse material.  *Id.* at 1-2.  In Paragraph 35, Special Agent Scott explains in detail, "Characteristics Common to Individual's Involved in Receiving Child Pornography and Who Have a Sexual Interest in Children and Images of Children."  *Id.* ¶ 35.a-e.   In Paragraphs 36 through 42, Special Agent Scott relates her knowledge, training, and experience with respect to computers, child pornography, the mechanics of searching and seizing direct evidence of crimes from electronic devices, and the mechanics of searching and seizing indirect evidence, such as metadata, from electronic devices.  *Id.* at 9-20.

## II.  Applicable Law

Mr. McLaughlin requests a *Franks* hearing.  As noted by the government, Mr. McLaughlin's Motion can be read as also challenging the existence of probable cause, separate from his *Franks* challenge.  Omnibus Resp. 28; Mot. For Franks Hrg. at 2, 7.  The legal standards for both probable and a *Franks* hearing is set forth below.

### A. Probable Cause

The Fourth Amendment of the United States Constitution protects the public from unreasonable searches and seizures.  When making a probable cause determination, a magistrate must ascertain "whether there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.'"  *United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir.1993) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983) (internal citations omitted)).  The test, as set forth in *Gates*, requires that the issuing magistrate "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information" there is probable cause to support a warrant.  *Id.* at 238.  A magistrate's "determination of probable cause should be paid great deference by reviewing courts."  *Id.* at 236.

"The duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed."  *Gates*, 462 U.S. at 236 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)).  "The supporting affidavit must be read in its entirety and in a commonsense and nontechnical manner."  *Conley*, 4 F.3d at 1208.  A warrant must be upheld "as long as there is a substantial basis for a fair probability that evidence will be found."  *Id.* at 1205.  Of course, a reviewing court must not "simply rubber stamp a magistrate's conclusions." *United States v. Tehfe*, 722 F.2d 1114, 1117 (3d Cir.1983).

### B. Standards for a *Franks* Hearing

With specific reference to the legal standards pursuant to *Franks*, "[t[he Fourth Amendment prohibits the intentional or reckless inclusion of a material false statement (or omission of material information) in a search-warrant affidavit."  *United States v. Pavulak*, 700 F.3d 651, 665 (3d Cir. 2012), citing *United States v. Yusuf*, 461 F.3d 374, 383–84 (3d Cir. 2006).

"To obtain a *Franks* hearing, a defendant must establish (1) that a warrant application contained false statements made with reckless disregard for the truth and (2) that the remaining truthful statements, standing alone, do not establish probable cause." *United States v. Desu*, 23 F.4th 224, 234 (3d Cir. 2022) (citing *Franks*, 438 U.S. at 171–72). "The defendant must prove his allegations by a "substantial preliminary showing."" *Desu*, 23 F.4th at 234 (quoting *Franks*, 438 U.S. at 171–72). "To carry his burden, [the defendant] cannot 'rest on mere conclusory allegations or a 'mere desire to cross-examine,' but rather must present an offer of proof contradicting the affidavit, including materials such as sworn affidavits or otherwise reliable statements from witnesses." Desu, 23 F.4th at 234 (quoting *Yusuf*, 461 F.3d at 383 n.8) (quoting *Franks*, 438 U.S. at 171). "If a defendant succeeds in obtaining a hearing, he must then prove the allegations by a 'preponderance of the evidence' at the hearing itself in order for a judge to suppress evidence obtained as a result of the warrant." *Desu*, 23 F.4th at 234 (quoting *Franks*, 438 U.S. at 156).

The United States Court of Appeals for the Third Circuit "categorize[s] false statements as 'omissions' or 'assertions.'" *Desu*, 23 F.4th at 234 (quoting *Wilson v. Russo*, 212 F.3d 781, 783 (3d Cir. 2000). "'[A]ssertions are made with reckless disregard for the truth when an officer has obvious reasons to doubt the truth of what he or she is asserting.'" *Desu*, 23 F.4th at 234 (quoting *Wilson*, 212 F.3d at 783). "'[O]missions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would know that a judge would want to know.'" *Desu*, 23 F.4th at 234 (quoting *Wilson*, 212 F.3d at 783). If a defendant succeeds in establishing that that there were false assertions or reckless omissions of fact, the defendant must then demonstrate that such assertions or omissions were "material, or necessary, to the finding of probable cause." *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3rd Cir. 1997).

Materiality is determined by "excis[ing] the offending inaccuracies and insert[ing] the facts recklessly omitted, and then determine[ing] whether or not the 'corrected' warrant affidavit would establish probable cause." *Wilson*, 212 F.3d at 789 (citing *Sherwood*, 113 F.3d at 399).

### III. Motion for a *Franks* Hearing

Mr. McLaughlin contends that the Facebook Affidavit lacks probable cause because it contains reckless misstatements of fact, reckless material misrepresentations, and reckless omissions.[6]  As the Search Warrants Affidavit contains the same information challenged in the Facebook Affidavit, Mr. McLaughlin argues that both Affidavits are invalid under *Franks*.  Mr. McLaughlin focuses his argument on Special Agent Garver's reliance on an "unnamed informant," the sister of the victim, and the alleged omission of information in the Facebook Affidavit as to the sister's background, credibility, truthfulness, or history of contact.  Mot. for Franks Hrg. at 5, 6.  Mr. McLaughlin also contends that the affiant failed to corroborate the information provided by the sister.  *Id*. at 5.  As a result of the affiant's "reckless disregard for the truth" related to the credibility of the sister and the reliability of her information, Mr. McLaughlin concludes that the two Affidavits "materially misrepresent the weight of the evidence against Mr. McLaughlin." *Id.* at 7.  Mr. McLaughlin further argues that if the averments in the Affidavit referring to the sister are stricken, the remaining averments of both Affidavits are insufficient to establish probable cause.  This is so, Mr. McLaughlin argues, because the foundation for establishing probable cause in the Facebook Affidavit rests on the information obtained from the sister.

---

[6] Mr. McLaughlin refers to both material misrepresentations and omissions of fact, but he does not specify what material misrepresentations were made.

A.  *Franks* Analysis

A "reasonable person" trying to establish probable cause for a warrant to search a Facebook user's account, "would know that a judge" reviewing the affidavit "would want to know" the informant's background, the degree to which the informant is considered credible and reliable, and whether the information provided by the informant has been corroborated.  *Desu*, 23 F.4th at 234.  Here, the affidavit informs the judge that law enforcement was able to corroborate all material aspects of the information provided by the sister and establish her as credible and reliable.  Law enforcement interviewed the sister, the victim, and their mother, which confirmed the sister's primary report to the Sheriff's Investigator; namely, that the victim had engaged in online contacts with others that appeared to constitute evidence of child sexual abuse materials. Furthermore, law enforcement conducted a face-to-face interview with the sister, "which bolster[s] the credibility of the citizen providing the information."  *United States v. McKay*, No. 2:12CR252, 2014 WL 5148181, at *5 (W.D. Pa. Oct. 14, 2014) (citing *United States v. Valentine*, 232 F.3d 350, 353–54 (3d Cir.2000) (the ability to assess the informant's character and demeanor in a face-to-face interview as well as the ability to hold the informant accountable for providing false information are attributes that contribute to the assessment of the informant's reliability)).  Law enforcement's interview with the victim also corroborated the sister's information as well as providing additional information as to similar online activity engaged in by the victim with other males.  The interviews with all three members of the family could have, but did not, demonstrate that the sister was being untruthful.

In addition, the mother consented to law enforcement covertly taking over the victim's online Facebook account.  A judge reviewing the Affidavit would be able to reasonably infer that the mother's actions indicate that the mother believed that her daughter was in fact a victim,

consistent with the sister's report. The covert interactions with the Timmy Adams Facebook account further corroborated the sister's initial report, as such interactions demonstrated that "Timmy Adams" engaged in unlawful activity with the online covert employee posing as a minor, similar to Timmy Adams' interactions with the victim, as reported by the sister.

Furthermore, the "distinction between an informant and a witness [such as the sister] or a victim is important in the Fourth Amendment context because information from an informant must be closely scrutinized whereas information from a witness or a victim is entitled to a presumption of reliability." *United States v. Mykytiuk*, 402 F.3d 773, 776 (7th Cir. 2005) (citing Wayne R. LaFave, Search and Seizure, § 3.3 (3d ed.1996)). "The general connotation of 'informant' in the criminal justice context is not merely one who provides information, but rather a person providing information to law enforcement and who is closely intertwined in the crimes and criminals that are being investigated." *Mykytiuk*, 402 F.3d at 776 (citing Wayne R. LaFave, Search and Seizure, § 3.3 (3d ed.1996)). Finally, the sister, as a witness to potential crimes is typically entitled to a presumption of reliability such that a reasonable officer would be justified in investigating the report further. *See Wilson*, 212 F.3d at 790 and *Stafford v. Morris*, 816 F. App'x 712, 717 (3d Cir. 2020). Here, Special Agent Garver and other law enforcement officers did investigate further based on the sister's report of crimes being committed. The investigation led to the conclusion that probable cause existed to search the Facebook account of user timmy.adams.54738. Finally, Mr. McLaughlin does not specifically state why a judge reviewing the affidavit at issue would have reason to question the credibility and reliability of the minor sister in light of the type of information in the Affidavit as a whole. *Desu*, 23 F.4th at 234 (defendant cannot rest on mere conclusory allegations).

On the basis of the above, the Court concludes that the affidavit provides clear corroboration of the sister's information, and establishes the sister as credible, truthful, and reliable.  To the extent Special Agent Garver did not specifically state that the sister was credible or reliable, such omission is not material where he provided sufficient and persuasive information from which a judge could conclude that the sister was credible and reliable.  The Court therefore finds that a judge, reviewing the affidavit in a commonsense manner and considering all of the information and circumstances presented, would be able to conclude that the information provided by the sister was credible, reliable, and truthful.  The Court further finds that a reasonable judge reviewing the affidavit as a whole would be justified in determining that probable cause had been established.  Therefore, the Court concludes that Mr. McLaughlin has not made a substantial preliminary showing that there are material misrepresentations or omissions of fact to justify a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).  Accordingly, Mr. McLaughlin's Motion for a *Franks* hearing will be denied.

## IV.    Motion to Suppress

Mr. McLaughlin also challenges whether the affidavits provide sufficient probable cause to justify the issuance of the warrants.  He similarly argues that the Facebook Affidavit does not sufficiently establish the reliability and credibility of the sister who initially informed the Sheriff's Investigator about the alleged unlawful acts, leaving the Facebook Affidavit as well as the Search Warrants Affidavit without sufficient probable cause for the Facebook warrant or the person and residence search warrants.  As the argument depends on the averments in the Facebook Affidavit, the Court reviews that affidavit to determine if probable cause existed.

The Facebook Affidavit "must be read in its entirety and in a commonsense and nontechnical manner."  *Conley*, 4 F.3d at 1208.  A judge reviewing the affidavit is to "make a

practical, common-sense decision whether, given all the circumstances set forth in the affidavit

before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay

information" there is probable cause to support a warrant. *Gates*, 462 U.S. at 238. The judge

reviewing the Facebook Affidavit in this case was presented with detailed specificity about the

investigation, beginning with the victim's sister's initial report of alleged unlawful conductgiven

to the Erie County Sheriff's Investigator. Special Agent Garver's recitation of the steps

undertaken by law enforcement following the Sheriff's Investigator's report demonstrate a

diligent and careful investigation built on the facts law enforcement learned as the investigation

proceeded. To summarize, Special Agent Garver learned about possible illegal conduct

involving a minor from the Sheriff's Investigator. The Investigator told Special Agent Garver

that he learned about the alleged unlawful conduct from the victim's twin sister. Law

enforcement interviewed both the sister and the victim. The victim told law enforcement that she

had interacted with Facebook user Timmy Adams, which included the exchange of nude photos.

Facebook Aff. ¶ 11. The photos and conversations, however, had been deleted from her phone.

*Id.* at 6, 11. Law enforcement also gained consent from the victim's mother to covertly use the

victim's Facebook account. The covert contact demonstrated that the Facebook user Timmy

Adams was in fact engaging in apparent illegal conduct with minors. Law enforcement reviewed

the Facebook user's account through an administrative subpoena and discovered a phone number

associated with the account. Further investigation revealed that the phone number was registered

to Mr. McLaughlin, who had an address in the Western District of Pennsylvania, and who also

had a relevant criminal history. The Facebook Affidavit provided sufficient probable cause for

the reviewing judge to conclude that evidence of crimes would be found in the Facebook account

of user timmy.adams.54738. Subsequently, the affidavit drafted by Special Agent Scott, which

included the same averments in the Facebook Affidavit, supplemented with the averments

detailing the Pittsburgh FBI's investigation, provides probable cause for the reviewing judge to

conclude that evidence of crimes would be found on Mr. McLaughlin's person and his residence.

The Court concludes that the affidavits provide sufficient probable cause to support the issuance

of the three search warrants.  Accordingly, Mr. McLaughlin's Motion to Suppress Evidence will

be denied.

## V.      Conclusion

The Court finds that Mr. McLaughlin has not made a substantial preliminary showing

that there are material misrepresentations or omissions of fact to justify a hearing pursuant to

*Franks v. Delaware*, 438 U.S. 154 (1978).  Accordingly, Mr. McLaughlin's Motion for a *Franks*

hearing will be denied.  The Court also finds that the Facebook Affidavit and the Search

Warrants Affidavit contain sufficient probable cause to support the issuance of the Facebook

Warrant, the Person Warrant, and the Residence Warrant.  Accordingly, Mr. McLaughlin's

Motion to Suppress will be denied.


## **ORDER**

AND NOW, this 10th day of April 2024 it is hereby ORDERED that Defendant Jeffrey

McLaughlin's Motion for a *Franks* Hearing and to Suppress (ECF No. 39) is DENIED.


Marilyn J. Horan
United States District Judge